# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SHARMEL SULLIVAN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 10 C 8132** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | **Magistrate Judge Morton Denlow** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Sharmel A. Sullivan ("Claimant") brings this action under 42 U.S.C. §405(g), seeking reversal or remand of the decision by Defendant Michael J. Astrue, Commissioner of Social Security ("Defendant" or "Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Claimant raises the following issues: 1) whether the ALJ improperly failed to include limits found in concentration, persistence or pace in her RFC Assessment (and in posing hypothetical questions to the Vocational Expert); 2) whether the ALJ improperly ignored evidence of the State Agency Doctor's opinions; 3) whether the ALJ's credibility finding was patently wrong; and 4) whether the ALJ properly considered evidence of Claimant's treating

therapist's opinion.[1]  For the following reasons, the Court grants Claimant's motion for summary judgment and denies the Commissioner's motion to affirm the Commissioner's decision.

## I.  BACKGROUND FACTS

### A.  Procedural History

Claimant initially filed for DIB on March 15, 2007 and SSI on August 16, 2007, alleging a disability onset date of July 6, 2006.  R. 131-36, 150-52.  The Social Security Administration ("SSA") denied her application on August 24, 2007.  R. 70-74.  Claimant then filed a request for reconsideration, which was denied on January 14, 2008.  R. 75-83.  Thereafter, Claimant requested a hearing before an ALJ.  R. 94-98.

On November 23, 2009, Administrative Law Judge Sherry Thompson ("ALJ") presided over a hearing at which Claimant appeared with her attorney, Ms. Revel.  R. 33-66.  Claimant and Richard T. Fisher, a vocational expert, testified at the hearing.  On December 22, 2009, the ALJ issued a decision finding Claimant was not disabled under the Social Security Act.  R. 6-22.  Specifically, the ALJ found Claimant had the "residual functional capacity to perform sedentary work" and was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  R. 14, 22.

---

[1] Claimant originally raised an additional issue: whether the ALJ erred in failing to identify and resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). However, Claimant has conceded this issue in her reply brief.

Claimant then filed for review of the ALJ's decision to the Appeals Council. R. 27-30. On October 20, 2010, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. R. 1-5. Claimant subsequently filed this action for review pursuant to 42 U.S.C. §405(g).

## B.     Hearing Testimony - November 23, 2009

### 1.     Sharmel A. Sullivan - Claimant

At the time of the hearing, Claimant was twenty-eight years old. R. 36. Claimant completed education through the twelfth grade and one semester of college. R. 38. She was enrolled in special education classes beginning in second grade. *Id.*

Claimant's most recent employment as a packer at a warehouse ended on July 6, 2006, her alleged onset date. R. 39. Claimant has worked various temporary jobs since July 6, 2006, through a temporary agency, but she is not currently employed. R. 39-42. Past positions include newspaper and pizza deliverer, laundry room worker at a nursing home, and picker and packer at a warehouse. R. 178, 191.

Claimant testified that she has been taking indomethacin for gout in her left foot. R. 40. Even with medication, Claimant asserted her foot is swollen constantly, she has a hard time standing or walking, and sometimes the pain is so severe it wakes her up. R. 41. She can stand for no longer than "at least a couple hours, if that" and her pain is constant. R. 44, 47. Claimant keeps her leg elevated and can sit for "about two or three hours at the most,"

after which she needs to stand for a few seconds before she can move.  R. 49-50.  She struggles with concentration when she feels pain in her left foot, which occurs about three days a week.  R. 58.  Claimant sees Dr. Bender at Will Grundy Medical "maybe every other month" for her gout.  R. 43.

Claimant sees Dr. Chung every month for treatment of bipolar disorder.  R. 43-44. She testified to having "my up days and I have my low days."  R. 44.  On bad days, Claimant is depressed, does not want to eat or go anywhere, is very emotional, and will not answer the phone.  R. 45.  On her good days, Claimant is able to go to functions with her church community and friends.  R. 44-45.

Claimant attends church regularly and also volunteers.  R. 51.  She reported no difficulties interacting with others, including strangers.  R. 51.  Claimant also speaks at recovery meetings to "help people out with my telling them about using drugs."  R. 54. Claimant testified she stopped using drugs and drinking alcohol four years and nine months ago. R. 54-55.

Claimant is able to do household chores, including laundry, cleaning, dusting, making the bed, and washing dishes.  R. 54.  She knows how to operate a computer and a cell phone. R. 56.

According to Claimant, she struggles with memory. R. 56. She has "to write everything down." R. 56. She sets an alarm to wake up in the morning in order to take her daily medication. R. 56. She receives telephone calls to remind her to attend church services and activities. R. 57.

Claimant takes 800 milligrams of Seroquel a day, 100 milligrams of Zoloft a day, and 15 milligrams of Buspar a day. R. 45. She reported no side-effects other than initial weight gain. R. 46. Claimant noted that she may not sleep for two or three days, but taking Seroquel helps her sleep. R. 50.

### 2. Richard Fisher - Vocational Expert ("VE")

Richard Fisher testified as a vocational expert. R. 60. The VE noted that Claimant's position as an outside deliverer was light, unskilled work with a Specific Vocational Preparation ("SVP") of 2. *Id.* Claimant was also employed as a hand packager, which is considered medium, unskilled work with a SVP of 2. *Id.* Claimant was also employed as a machine washer, which is categorized as medium, semi-skilled work with a SVP of 4. *Id.*

While questioning the VE, the ALJ asked whether a twenty-eight year old individual with the same education, work experience, and residual functional capacity as Claimant, limited to light work with frequent climbing of ramps and stairs, occasional climbing of ladders, ropes and scaffolds, and frequent balancing, stooping, kneeling, crouching and

crawling,[2] could perform Claimant's past relevant work. R. 62. The VE stated that this hypothetical person would be able to perform Claimant's previous work as an outside deliverer. R. 62. The VE testified that this individual could also perform positions such as an office machine operator (except computers), photocopying machine operator, photographic machine operator, routing clerk, maid and housekeeping cleaner. R. 62-63.

Using the same hypothetical individual, the ALJ altered the question by asking whether the individual, limited to sedentary work, who had to alternate from sitting to standing after two hours and then stand for a period of five to ten minutes, and who had to elevate her left foot to stool level height approximately ten to twelve inches, could perform Claimant's past relevant work. R. 63-64. The VE stated that this hypothetical person could perform as a food or beverage order clerk, telephone quote clerk, cutter and paster for press clippings, and a microfilm document preparer. R. 64.

The ALJ then changed the hypothetical to an individual who could perform either light or sedentary work, but who has no ability to remember or organize procedures, and who has seriously limited ability to carry out short and simple instructions, such that she cannot maintain attention for a two hour setting. R. 64. The VE responded that such an individual

---

[2] The hypothetical posed by the ALJ also described the individual as one who should avoid concentrated exposures to fumes, odors, dust, gases and poor ventilation; who retains sufficient mental capacity to understand and remember simple tasks; who can carry out tasks at a consistent pace; who can have normal contact with the general public, co-workers and supervisors; and whose ability to handle stress and pressure in the workplace wold be reduced but is adequate to handle the stresses of a routine, repetitive work setting. R. 62.

would not be able to perform any of Claimant's past relevant work.  R. 64.  When asked by the ALJ if this individual could perform any work that exists in the national economy, the VE responded in the negative.  R. 64.

The VE testified that customary tolerances for absences from unskilled jobs are one time per month.  R. 64.  He stated that reminder phone calls for employees to come in to work, while not unheard of, are not expected such that "as a new employee you wouldn't last if you required a reminder call with any frequency."  R. 65.

## C.        Medical Evidence

### 1.        Provena St. Joseph Medical Center

Clamant went to Provena St. Joseph Medical Center on May 3, 2006 for a radiographic study of her left foot.  R. 279.  Dr. Sasan Payvar reported no significant radiographic abnormality about the left foot.  *Id.*  Clamant returned again to Provena St. Joseph Medical Center on June 14, 2006.  R. 212.  Dr. John S. Groch performed diagnostic imaging on Claimant's chest, which indicated chest pain and asthma.  *Id.*

### 2.        Silver Cross Hospital

On July 23, 2007, Claimant went to Silver Cross Hospital for a diagnostic imaging report on her chest.  R. 276.  Dr. Vinod Patel noted no significant abnormalities.  *Id.*

### 3. Will County Mental Health - Guna M. Zito, QMHP

Claimant visited Will County Mental Health on August 1, 2006 for a psychiatric assessment. R. 319. Guna M. Zito, QMHP ("Ms. Zito") diagnosed Claimant with major depression, described as recurrent and severe, as well as Bipolar II Disorder, asthma and gout. *Id.* She recommended a psychiatric evaluation, client centered consultant, and individual therapy. *Id.* Ms. Zito assessed Claimant's memory as normal, and rated her concentration at focused. R. 321. She further assessed Claimant's behavior as guarded. *Id.* Ms. Zito noted an independent level of function for categories such as using community resources, level of appropriate social and interpersonal behavior, and ability to form and maintain friendships. R. 322.

Between August 18, 2006 and January 16, 2009, Claimant regularly visited Will County Mental Health for therapy and counseling. R. 504-25. On July 12, 2008, Claimant was again assessed for mental impairments. R. 497-500. Claimant was diagnosed with bipolar disorder, borderline personality traits, gout, obesity, and asthma. R. 497. Her GAF score was 60. *Id.* The therapist (whose name is illegible) identified numerous symptoms associated with this diagnosis, including poor memory, sleep and mood disturbances, personality change, delusions or hallucinations, recurrent panic attacks, psychomotor agitation, difficulty thinking or concentrating, social withdrawal, and hostility. *Id.* He anticipated that Claimant's impairments would cause her to be absent from work more than three times a month. R. 498. The therapist indicated serious limitations in Claimant's mental

abilities and aptitude to do unskilled work, including ability to remember work-like procedures; understand, remember and carry out very short and simple instructions; maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and work week without interruptions from psychologically based symptoms; and get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. R. 499. He also indicated that Claimant had moderate restrictions of activities of daily living; moderate difficulties in maintaining social functioning; frequent deficiencies of concentration, persistence or pace; and repeated episodes of deterioration in work-like settings. R. 500.

### 4. Will Grundy Medical Clinic - Dr. Bender, podiatrist

From March 2006 to 2009, Claimant sought treatment at Will Grundy Medical Clinic, where she was treated by Podiatrist Frank Bender ("Dr. Bender"). R. 542-54. Claimant would often complain of left foot pain due to gout. *Id.* In April 2006, Dr. Bender noted that on a scale of one to ten (ten being the most severe pain), Claimant reported her pain level in her left foot as a ten. R. 266. In September 2006, Dr. Bender noted "[p]ain now appears in right foot also on the arch and big toe. Minimal swelling, no pitting edema." R. 263. In July 2007, Dr. Bender noted Claimant's foot and leg appeared edematous. R. 255. Dr. Bender continuously prescribed medication for Claimant, noting that she found relief from indomethacin and that it helped control her foot pain. R. 553, 545-48.

Dr. Bender also treated Claimant for her asthma. R. 542-54. Claimant would often complain that her chest hurt and that she had shortness of breath. *Id.* On numerous occasions, Dr. Bender found Claimant's lungs clear. R. 258-59, 264, 267. Claimant also stated she used an inhaler twice a day, every day. R. 265. Dr. Bender noted the use of inhalers helped Claimant with her difficulty breathing. R. 259. In December 2007, Dr. Bender found Claimant's asthma "fairly stable." R. 547.

**5.      Dr. Chukwuemeka Erike**

In July 2007, Dr. ChukwuEmeka F. Ezike ("Dr. Ezike") conducted a consultative physical examination of the Claimant. Dr. Ezike reported mild swelling and diffuse tenderness of Claimant's left foot. R. 441. Dr. Erike noted Claimant was unable to squat completely, her gait was slightly antalgic, and she had difficulty performing a toe heel walk due to the pain in her left foot. *Id.* Dr. Ezike diagnosed Claimant with obesity, history of asthma, chronic left foot pain, bipolar disorder. R. 441-42.

**5.      Dr. Marion Panepinto - State Examining Physician**

Dr. Marion Panepinto ("Dr. Panepinto") reviewed the record on behalf of the state agency. He determined Claimant could lift thirty pounds occasionally and ten pounds frequently. R. 431. During a normal eight hour workday, Dr. Panepinto reported Claimant could stand and walk for about six hours, sit for about six hours, and push and pull in an unlimited manner. *Id.* He also determined Claimant could climb ramps and stairs frequently;

could climb ladders, ropes and scaffolds occasionally; and could balance, stop, kneel, crouch and crawl frequently.  R. 432.  Dr. Panepinto found no manipulative limitations, communicative limitations, or visual limitations.  R. 433-34.  Dr. Panepinto reported Claimant should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  R. 434.

### 6.    Dr. Ellen Rozenfeld - State Examining Psychiatrist

Dr. Ellen Rozenfeld ("Dr. Rozenfeld") assessed Claimant from July 6, 2006 to August 23, 2007.  R. 444.  Dr. Rozenfeld reported Claimant suffered from bipolar disorder, post-traumatic stress disorder, and a history of polysubstance abuse.  R. 447, 449, 452.  In rating Claimant's functional limitations, Dr. Rozenfeld noted she had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation.  R. 454.  Dr. Rozenfeld also found Claimant credible.  R. 456.  She reported Claimant has a severe mental impairment that does not meet or equal the listings; retains sufficient mental capacity to perform operations of a simple and routine nature; engages in a general and full range of activities; and has had a positive response to medication despite persistent paranoid concerns.  *Id.*

Dr. Rozenfeld opined that Claimant would do best in an environment with reduced contact with the general public, co-workers and supervisors.  R. 460.  Her ability to handle

stress and pressure in the work place would be reduced but adequate to handle the stresses of a routine, repetitive work setting. *Id.*

## D. The ALJ's Decision - December 22, 2009

Following a hearing and a review of the medical evidence, the ALJ rendered a decision denying Claimant's application for DIB and SSI. R. 6-22. The ALJ reviewed Claimant's application under the required five-step sequential analysis. R. 11-22. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since July 6, 2006, the alleged onset date. R. 11. At step two, the ALJ determined Claimant had the severe impairments of history of asthma, chronic left foot pain due to gout, obesity, and bipolar disorder. *Id.* At step three, the ALJ found Claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpt. P, App. 1. *Id.* The ALJ then considered Claimant's residual functioning capacity ("RFC")[3] and found Claimant capable of performing sedentary work, except she must alternate between sitting and standing every two hours, and must then stand for five to ten minutes. R. 14. She must also keep her left foot elevated ten to twelve inches. *Id.*

---

[3] A residual functional capacity assessment is the most that a person can do despite their physical and mental limitations. The Social Security Administration assesses a person's residual functional capacity based on all the relevant evidence in his or her case record. 20 §C.F.R.404.1545(a).

In assessing Claimant's RFC, the ALJ considered all of Claimant's symptoms and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* The ALJ found Claimant's impairments could reasonably be expected to cause the alleged symptoms, but that Claimant's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible." R. 16. In reviewing Claimant's medical records, the ALJ noted that while she did complain of symptoms related to her gout and asthma, diagnostic testing and clinical observations revealed that her impairments were not especially limiting. *Id.*

Specifically, the ALJ found that Claimant has been prescribed fairly routine pain and asthma medication, with apparently effective results, especially given that Claimant's treating physicians have not recommended a more drastic form of treatment. R. 18. The ALJ also emphasized that Claimant has performed temporary work since her onset date and has further expressed a desire to return to full time employment. *Id.* The ALJ also gave significant weight to the opinion of the State agency psychiatric consultant, who testified that Claimant would adequately be able to handle the stresses of a routine, repetitive work setting. R. 19. The ALJ concluded that Claimant's treating therapist's assessment was not supported by the medical evidence on record, and thus gave it little weight. R. 19-20.

At step four, the ALJ found Claimant was unable to perform any past relevant work. R. 20. At step five, the ALJ found "there are jobs that exist in significant numbers in the

national economy that [C]laimant can perform." R. 21. Thus, the ALJ concluded Claimant was not disabled under the Social Security Act.

## II. LEGAL STANDARDS

### A. Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commission's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* The reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). A "mere scintilla" of evidence is not enough. *Id.*; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when the record contains adequate evidence to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or

an adequate discussion of the issues, it must be remanded. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports the findings. *Id.*

## B.    Disability Standard

Disability insurance benefits are available to a claimant who can establish he is under a "disability" as defined by the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if he is unable to perform his previous work and cannot, considering his age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id*. Once the claimant has proven he cannot continue his past relevant work due to physical limitations, the ALJ must determine whether other jobs exist in the economy that the claimant can perform. *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008).

### III. DISCUSSION

Claimant raises the following issues in support of her motion: 1) whether the ALJ improperly failed to include limits in concentration, persistence or pace in her RFC Assessment (and in posing hypothetical questions to the Vocational Expert); 2) whether the ALJ improperly ignored evidence of the State Agency physician's opinion; 3) whether the ALJ's credibility finding was patently wrong; and 4) whether the ALJ properly considered evidence of Claimant's treating therapist's opinion.

**A.** **The ALJ Did Not Improperly Fail to Include Limits in Concentration, Persistence or Pace in her RFC Assessment.**

In her RFC finding, the ALJ found that Claimant "retains sufficient mental capacity to understand and remember simple tasks, and she can carry out such tasks at a consistent pace. . . . Despite having reduced ability to handle stress and pressure in the workplace, she can still adequately handle the stresses of a routine, repetitive work setting." R. 14. In posing hypotheticals to the VE, the ALJ repeated that exact wording. R. 62-64. However, Claimant urges remand based on an initial finding by the ALJ in which she stated that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties." R. 13. Claimant argues it was an error for the ALJ not to include these limitations of concentration, persistence or pace in posing hypotheticals to the VE.

Claimant urges remand in light of a recent Seventh Circuit opinion, which held that the ALJ, in orienting the VE to the totality of the claimant's limitations, should include deficiencies of concentration, persistence and pace. *O'Conner-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). The most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical. *Id.* However, the Seventh Circuit has identified two circumstances in which the exact language of "concentration, persistence, or pace" is not required in the hypothetical. *Id.* at 610. First, the court can sometimes assume a VE's familiarity with a claimant's limitations, despite any gaps in the hypothetical, "when the record shows that the VE independently reviewed the

medical record or heard testimony directly addressing those limitations." *Id.* Second, the court will let stand an ALJ's hypothetical omitting the terms "concentration, persistence and pace" when it is "manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id.* This case falls into the second exception described in *O'Conner-Spinner*.

In a recent opinion by this Court, it analyzed the hypotheticals posed to the VE and found, under *O'Conner-Spinner*, that the ALJ did not fully account for the Claimant's mental impairments in concentration, persistence and pace. *White v. Astrue*, No. 10 C 5541, 2011 U.S. Dist. LEXIS 122848, at *20-27 (N.D. Ill. Oct. 24, 2011) (finding the ALJ did not adequately explain how she accounted for Claimant's limitations in concentration, persistence and pace by limiting Claimant only to simple, repetitive tasks in the hypotheticals posed to the VE). However, in the case at bar, the ALJ has fully accommodated the Claimant's limitations in posing hypotheticals to the VE, despite not using the exact language of "concentration, persistence or pace." The ALJ's hypothetical questions posed to the VE specifically indicated Claimant's mental and physical capacity to perform simple tasks at a consistent pace, as well as her ability to handle a routine, repetitive work environment. R. 62-64.

Furthermore, while the ALJ did not use the exact language of "concentration, persistence or pace" in her hypotheticals, the ALJ built the requisite logical bridge to justify the omission. In assessing Claimant's RFC, the ALJ gave "significant weight" to the

18

findings of the State Agency consultant, who found Claimant retains sufficient mental capacity to remember and carry out routine and simple tasks with adequate persistence and pace. R. 19. The ALJ also clearly explained her rationale for not giving substantial weight to Claimant's treating therapist, who did indicate that Claimant has frequent deficiencies in concentration, persistence, or pace. R. 19-20. Furthermore, the ALJ extensively examined Claimant's mental health history, finding the "evidence suggests that with proper supervision, the claimant would be able to perform simple and routine tasks on a sustained basis." R. 20.

Because the ALJ, through her alternative phrasing, did sufficiently include limitations in concentration, persistence or pace in posing hypotheticals to the VE, this case does fall within the second exception indicated in *O'Conner-Spinner*.

**B.      The ALJ Erred in Ignoring the State Agency Consultant's Opinion.**

An ALJ makes a RFC determination by weighing all the relevant evidence on record. 20 C.F.R. § 404.1545(A)(1); SSR 96-8p. State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act. SSR 96-6p. The ALJ is required by 20 C.F.R. § § 404.1527(f) and 416.927(f) to consider the state agency physician's findings of fact about the nature and severity of the claimant's impairments as opinions of non-examining physicians; while the ALJ is not bound by the opinion, she may

not ignore it either and "must explain the weight given to the opinions in [her] decisions."

*Id.*

Here, in assessing Claimant's RFC, the ALJ gave "significant weight" to the findings of the State Agency consultant, finding her "assessment is very consistent with the objective mental evidence of record." R. 19.  However, the ALJ determined that Claimant could have normal interactions with the general public, co-workers and supervisors, despite the State Agency consultant's opinion that Claimant would do best in an environment with reduced contact with the general public, co-workers and supervisors.  R. 20, 460.  The ALJ did not cite to the record to indicate how she formed the conclusion that Claimant could have normal interactions.  In fact, there is no medical testimony on the record indicating Claimant can have normal interactions with the general public, co-workers and supervisors.  The ALJ did not explain this discrepancy, and thus failed to build a bridge between the record and the conclusion.

Defendant seemingly concedes this inconsistency, but claims any error was harmless. Defendant notes that two of the jobs which the ALJ found Claimant could perform—cutter-and-paster and document preparer—involve reduced interpersonal contact, and thus remand

to include this limitation would serve no purpose.[4]  However, the Court cannot conclude as a matter of law that any error was harmless.  In a situation where the ALJ's hypothetical to the VE is based upon an insufficient RFC, it must be remanded to the SSA for further proceedings.  *Young v. Barnhart*, 362 F.3d 995, 1004-05 (7th Cir. 2004).

**C.    The ALJ's Credibility Finding Was Not "Patently Wrong," but In Light of the Remand, the ALJ Should Revisit the Issue.**

When faced with a claimant alleging subjective pain symptoms, an ALJ evaluates the credibility of a claimant's testimony about her pain.  SSR 96-7p.  The ALJ must consider the testimony in light of the entire record and be "sufficiently specific" as to the reasons for his credibility determination.  *Id.*  Since the ALJ is in the best position to observe witnesses, however, his credibility finding will not be overturned as long as it has some support in the record.  *Dixon v. Massanari*, 270 F.3d 1171, 1178-79 (7th Cir. 2001).  An ALJ's credibility determination will be reversed only if the claimant can show it was "patently wrong."  *Herr v. Sullivan*, 912 F.2d 178, 182 (7th Cir. 1990).  A lack of medical testimony in the record supporting a claimant's subjective complaints of pain may be probative of a claimant's credibility.  *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).

---

[4] Defendant urges the Court to rely on the DOT which explains that both of the remaining jobs are "not significant" in the "people" digit, including "taking instructions-helping."  However, without VE testimony supporting a finding that someone with Claimant's social limitations could sustain employment in these positions, the Court does not feel equipped to independently make such a determination.

### 1. Foot Pain and Asthma Impairments

First, the ALJ evaluated Claimant's credibility as to the purported persistence, intensity and limiting effects of her foot pain and asthma. R. 14-18. The ALJ found that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not credible." R. 16. The ALJ noted that while Claimant's medical records reflect her consistent complaints of symptoms related to her gout and asthma, diagnostic testing and clinical observations revealed that Claimant's impairments were not especially limiting. R. 16. Specifically, the ALJ referred to Claimant's x-ray and CT results which did not indicate serious impairments, and reports from Claimant's treating physician documenting significant improvement in Claimant's symptoms following use of an inhaler and pain medication. R. 16-18. The ALJ further considered the fact that Claimant has performed temporary work since her onset day, as well as the fact that the record does not contain any opinions from Claimant's treating physicians that her physical impairments would prevent her from working. R. 18. The ALJ found this evidence "diminishes the credibility of the claimant's allegations that her impairment would prevent her from working altogether." R. 16.

Claimant argues that the ALJ improperly found that Claimant's stated desire to work, and her actual ability to work, undermined her allegations of physical limitations. However, the ALJ's credibility determination has support in the record beyond the fact that Claimant

was able to perform temporary work. Specifically, the ALJ found that Claimant's complaints were not credible in light of the opinions of numerous physicians who examined her and found little objective evidence to support her claims of severe limitations due to gout and asthma.

## 2. Mental Health Impairments

The ALJ also examined Claimant's credibility as to the limiting effects of her mental health impairments. R. 18-20. The ALJ found that Claimant's mental health treatment records "do not contain objective or clinical findings that would support a finding of [] extreme mental limitations." R. 20. Specifically, the ALJ noted that Claimant's mental health records reveal that her diagnoses and symptoms have remained stable for some time, and Claimant continues to have positive results from consistent medication. *Id.* Furthermore, the ALJ noted that Claimant's own testimony at the hearing refutes a finding of severe limitations due to her mental health. *Id.*

Claimant argues that the ALJ relied heavily on Claimant's testimony of her good days, yet disregarded testimony of her bad days. Given that Claimant has been repeatedly diagnosed with bipolar disorder, for which she is under continuous drug treatment, she is likely to have good days and bad days. *See Philips v. Astrue*, 413 Fed.Appx. 878, 886 (7th Cir. 2010) (collecting cases). However, the record does not indicate whether the ALJ took into consideration Claimant's testimony of her low functioning on bad days. If half of the

time Claimant is not well enough to work, then she cannot hold down a full-time job. *See Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008).

The ALJ's credibility determination has some support in the record, such that the Court cannot say that the judgment is "patently wrong." However, in light of the remand in this case, the ALJ should revisit the credibility issue to determine whether her findings remain the same.

## D. The ALJ Properly Considered Claimant's Treating Therapist's Opinion.

The ALJ gave "very little weight" to Claimant's treating therapist's finding of disabling mental impairments, holding that Claimant's mental health treatment records "do not contain objective or clinical findings that would support a finding of such extreme mental limitations." R. 19-20. Claimant contends that the ALJ erred in not explaining why Claimant's treating therapist's opinion was given insignificant weight.

As Claimant correctly recognized, her treating therapist is considered "other medical sources." See 20 C.F.R § 404.1513(d)(1); SSR 06-03p. Although the opinions of other medical sources are important and should be considered when evaluating "key issues such as impairment severity and functional effects," their findings cannot "establish the existence of a medically determinable impairment." SSR 06–03p. In deciding how much weight to give to opinions from these "other medical sources," an ALJ should apply the same criteria listed in § 404.1527(d)(2): the length, nature, and extent of the treatment relationship, frequency

of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the therapists's opinion.

Claimant contends the ALJ failed to explain how she considered the afore-mentioned factors in finding that Claimant's treating therapist's assessment should be given little weight. However, the ALJ adequately linked her conclusion to evidence in Claimant's medical records. Specifically, the ALJ noted that Claimant's mental health records reveal that her diagnoses and symptoms have remained stable for some time, that Claimant continues to have positive results from consistent medication, and that the treating therapist never indicated that Claimant's mental symptoms would interfere with her ability to work. R. 20. While the ALJ may not have systematically detailed her findings as to each one of the given factors, such an extensive analysis is not required. According to SSR 06-03p, "the adjudication generally should explain the weight given to opinions for these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." The ALJ has met that standard.

## IV.  CONCLUSION

For the reasons set forth in this opinion, the Court grants Claimant's motion for summary judgment, denies the Commissioner's motion to affirm the Commissioner's decision, and remands the case to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED THIS 3rd DAY OF NOVEMBER, 2011.

_Morton Denlow_

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Barry A. Schultz
Law Offices of Barry A. Schultz, P.C.
1601 Sherman Ave.
Suite 510
Evanston, Illinois 60201

**Counsel for Plaintiff**

Charles R. Goldstein
Social Security Administration
200 West Adams Street
Suite 3000
Chicago, Illinois 60606

Jonathan C. Haile
U.S. Attorney's Office
219 South Dearborn Street
Suite 500
Chicago, Illinois 60604

**Counsel for Defendant**